IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TAVORIS WOODS and DIANNE WILSON,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | **CV-07-BE-1496-S** |
| ] | |
| **CITY OF BIRMINGHAM, ALABAMA,** ] **et al.,** ] | |
| ] | |
| **Defendants.** ] | |

**MEMORANDUM OPINION**

This matter comes before the court on Motion for Summary Judgment filed by Defendants City of Birmingham and former Police Chief Annetta Nunn (doc. 39) and supporting brief (doc. 40).  The court[1] entered a scheduling order (doc. 41) on October 20, 2008 that required any opposition to the motion to be filed within twenty-one days of the Order.  The Plaintiffs filed nothing in response.  For the reasons stated below, the court finds that the motion is due to be granted and judgment entered in favor of the City of Birmingham and Annetta Nunn, in her official and personal capacities.

Facts

Generally, the court should review all facts in the light most favorable to the non-moving party, and disputes of material facts will preclude summary judgment. See *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248-049 (1986).  However, in this case, the Plaintiffs failed to dispute

---

[1]This case previously was assigned to Judge U. W. Clemon who entered all prior orders. On February 5, 2009 (doc. 42), this case was reassigned to the undersigned judge.

1

any facts as stated by the moving Defendants. The court has also reviewed the deposition testimony submitted by the Defendants and finds that the testimony supports the facts as stated by the Defendants. The court, thus, concludes that no genuine issues of material fact exist; the court must then decide whether the facts stated below demonstrate that the Defendants are entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

The Defendants in this matter are the City of Birmingham, former Police Chief Annetta Nunn and former police officer Richard Bell.[2] The Plaintiffs are Tavoris Woods and Diana Wilson.

According to Woods, on or about August 15, 2005, he along with three friends, Richard Wyatt, Christopher Wilson, and Darius Parker, were playing computer games in the garage behind the residence located at 1521 35th Street, Ensley, Birmingham, AL 35218. Woods and his friends had also been smoking marijuana for three to four hours straight. Sometime between midnight and 1:00 a.m., three masked men came to the garage. The three men were carrying assault rifles and handguns. They ordered Woods and his friends to get onto the floor. Woods and his friends were robbed of their money and jewelry. The men then left.

After a few minutes on the floor, Woods and his friends got up and ran from the garage to the house to tell Wilson that they had been robbed. Wilson called 911 and reported the robbery. While on the phone with the 911 dispatcher, Wilson, Woods and the three friends proceeded outside to the front of the house. Outside, they noticed a police officer walking up 35th Street towards them with a flashlight. Wilson, Woods and the three friends then proceeded to go to the side of the house and saw a white car drive through the alley in back of the house. Thinking it

---

[2] Defendant Bell did not move for summary judgment.

was the robbers, Woods, Wilson and the three friends proceeded to run to the backyard of the house towards the alley. Woods alleges that he ran to the fence in the backyard, heard gun shots and then he proceeded to run back to the garage to retrieve his cell phone. Woods then ran to the back of the house and was attempting to open the back door of the residence when he heard gunfire and was hit two times. Woods alleges he was never told to stop by a police officer, did not see any police officers, and was never involved in a foot pursuit with the police prior to being shot. The house was then surrounded by Birmingham Police Officers. The police found an illegal handgun and a knife in Woods's vehicle.

Woods was transported to the University of Alabama at Birmingham Hospital. As his clothes were being removed by medical personnel, bags of cocaine and marijuana fell out of his pants. Woods was charged with various felonies, to which he later pled guilty. Woods admitted that he was "high" from smoking marijuana when the incident occurred and also that he had the drugs on him during the entire incident.

The Department of Internal Affairs investigated the shooting. The Birmingham Police Department Firearms Shooting Review Committee determined that the shooting was "out-of-policy." Defendant Chief Nunn suspended Defendant Officer Bell for fifteen days and ordered firearms retraining based on the fact that Bell discharged his weapon at Woods with a residence behind him.

## Discussion

Plaintiffs' claims against the City of Birmingham and Nunn are contained in Count II of the Complaint. That count, in essence, asserts claims for negligent hiring, training, supervision and retention under Alabama law. The City and Nunn assert discretionary function immunity to

support their motion for summary judgment.

     1. *Claims against the City arising out of respondeat superior liability*

As to Plaintiffs' claims against the City, Section § 11-47-190[3] of the Alabama Code governs municipal liability and limits *respondeat superior* liability of municipalities to state claims arising out of the "neglect, carelessness or unskillfulness of some agent, officer or employee of a municipality engaged in work therefor and while acting in the line of his or her duty." Section 11-47-190 specifically limits the vicarious liability of Alabama municipalities to negligence-based claims only. *Roberts v. City of Geneva*, 114 F. Supp. 2d 1199, 1213 (M.D. Ala. 2000). As a result, a municipality cannot be held liable for state law tort claims based upon any intentional, wanton, willful, malicious or reckless conduct of its agent. *See Ex parte City of Tuskegee*, 932 So. 2d 895, 910 (Ala. 2005) (stating that municipalities are immune from liability for agent's acts committed in bad faith or with malice); *Hilliard v. City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991) (wantonness claim barred). Further, a municipality cannot act with malice. *Franklin v. City of Huntsville,* 670 So. 2d 848, 850-52 (Ala. 1995); *Neighbors v. City of Birmingham*, 384 So. 2d 113, 113-4 (Ala. 1980). Any intentional, wanton, willful, malicious or reckless state claims against the City for intentional acts of its agents are, therefore, due to be dismissed.

---

    [3]No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, <u>unless</u> such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, . . . and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. Ala. Code § 11-47-190 (1975).

*2. Claims against Nunn in her official capacity as Police Chief*

The Plaintiffs' complaint names former Police Chief Nunn as a Defendant in her *official* capacity as Police Officer for the City of Birmingham. The Constitution of the State of Alabama grants to the state absolute immunity from lawsuits. Ala. Const. of 1901, § 14. This absolute immunity includes arms or agencies of the state, *see, e.g., Armory Comm'n of Ala. v. Staudt*, 388 So. 2d 991, 993 (Ala. 1980), but generally does not encompass cities or municipal agencies. *See Jackson v. City of Florence*, 320 So. 2d 68, 75 (1975). However, "when a county or municipality acts as an agent of the state, it is entitled to share in the state's absolute immunity." *Ex parte Tuscaloosa County*, 796 So. 2d 1100, 1103 (Ala. 2000). Accordingly, if Nunn were acting as an agent of the state at the time of her conduct made the basis of the instant suit, then she enjoys the same immunity as the state.

The Alabama Court of Civil Appeals and a sister federal court have extended immunity to city police officers *sued for monetary damages in their official capacities*, as agents of the state. *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1340 (M.D. Ala. 2007) (*sua sponte* dismissing negligence claim against police officer sued in his official capacity for monetary damages); *Key v. City of Cullman*, 826 So. 2d 151, 156 (Ala. Civ. App. 2001) (acknowledging that city police officer was entitled to state-agent immunity when sued in his official capacity for monetary damages). The court similarly finds that the extension of immunity to Nunn, sued for monetary damages in her official capacity as Police Chief, is appropriate because she was acting as agent of the state; the "official capacity" claims against Nunn are due to be dismissed.

3. *Claims against the City and Nunn, in her personal capacity, that are subject to the Alabama immunity doctrine* for *peace officers*

The City and Nunn, in her personal capacity, are also entitled to judgment under the Alabama immunity doctrine for peace officers, set forth statutorily in Section 6-5-338 of the Alabama Code [4] as applied by the Alabama Supreme Court. In their brief in support of the motion for summary judgment, the Defendants cited abrogated cases that applied this statute, without noting the abrogation, and failed to point out to the court that Alabama's doctrine of peace officer immunity has evolved since those cases. The court is disturbed by Defendants' reliance on abrogated caselaw, particularly in the circumstances presented in this case, when the Plaintiffs have not responded with a brief. The court should be able to rely on its officers of the court to fairly present the current status of the law.

In *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), the Supreme Court of Alabama set out a new test for determining whether a governmental employee is entitled to state-agent immunity under Alabama Code § 6-5-338(a):

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

---

[4](a) Every peace officer, . . . who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, . . . and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties. (b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers. . . . Ala. Code § 6-5-338 (1975).

>(1) formulating plans, policies or designs; or
>
>(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>(a) making administrative adjudications;
>(b) allocating resources;
>(c) negotiating contracts;
>(d) hiring, firing, transferring, assigning, or supervising personnel; or
>
>(3) discharging duties imposed on a department or agency by statute, rule, or regulation insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
>
>(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
>
>(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
>
>Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
>. . .
>(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

792 So. 2d at 405.

*Cranman* was a plurality decision; however, the Alabama Supreme Court has since adopted its restatement of the test for determining State-agent immunity. *E.g., Ex parte City of Tuskegee*, 932 So. 2d at 903. The Alabama Supreme Court acknowledged that the language in the *Cranman* test differs from the language in Alabama Code § 6-5-338. This statute purports to grant peace officers "immunity from tort liability arising out of his or her conduct in performance

of any discretionary function." Ala. Code § 6-5-338(a).  The Supreme Court reconciled the difference by determining that a State agent's conduct meeting "the *Cranman* standard is also a 'discretionary function' under § 6-5-338(a), Ala. Code 1975." *Ex parte City of Tuskegee*, 932 So. 2d at 905 (citing *Swan v. City of Hueytown*, 920 So. 2d 1075, 1078 (Ala. 2005)).  Since *Cranman*, then, the Alabama courts "analyze [Section 6-5-338(a)] immunity issues in terms of 'State-agent' immunity, rather than under the dichotomy of ministerial versus discretionary functions.'" *Ex parte City of Tuskegee*, 920 So. 2d at 904 (quoting *Ex parte Hudson*, 866 So. 2d 1115, 1117 (Ala. 2003)).

As Police Chief, Defendant Nunn's acts performed while running the Police Department qualify for State-agent immunity under the *Cranman* standard; the conduct alleged in Count II, including hiring, training, disciplining, supervising, and retaining police officers, certainly falls within category two of that standard:  "exercising . . . her judgment in the administration of a department or agency of government, including, but not limited to, examples such as: (a) making administrative adjudications; . . . (d) hiring, firing, transferring, assigning, or supervising personnel."  *Cranman*, 792 So. 2d at 405.  In addition, that conduct would also fall within category 4, "exercising judgment in the enforcement of the criminal laws of the State*.*"  Having met the *Cranman* standard, Nunn's conduct is also a "discretionary function" entitling her to immunity under Ala. Code § 6-5-338(a), and the immunity would extend to the City under Ala. Code § 6-5-338(b) as a "governmental [unit or agency] authorized to appoint [her]."  Ala. Code § 6-5-338(b) (1975).

Despite the meeting of the *Cranman* standard, peace officer immunity is not absolute; *Cranman* further provides that immunity nevertheless would not attach to a State-agent in her

personal capacity if she acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Cranman*, 792 So. 2d at 405. Plaintiffs shoulder the burden to establish this exception. *Howard v. City of Atmore*, 887 So. 2d 201, 205 (Ala. 2003). Although Count II of the Complaint alleges that Nunn's actions "were done with malice, recklessly, or with gross negligence," Plaintiffs offered no evidence that Nunn acted maliciously or in any other manner that would defeat immunity. Nunn and the Plaintiffs had never met prior to this incident. Further, Nunn did not know what had happened outside the residence nor was she present for the alleged shooting by Bell. The evidence does not show that Nunn abused, injured, or even intended to injure the Plaintiffs. Nor does the evidence presented on motion for summary judgment give even an inference of actual malice or lack of good faith, much less proof of it. In short, the Plaintiffs offered no evidence of malice or animosity on the part of Nunn, and have not otherwise met their burden of establishing that her conduct falls within the exception to immunity. And, as noted previously, a municipality cannot act with malice. *E.g.,* Franklin, 670 So. 2d at 850-52. Therefore, summary judgment should be granted in favor of the City and Nunn, in her personal capacity.

Having concluded that the City and Nunn qualify for immunity from this tort action, the court need not address the other inadequacies of Plaintiffs' claims addressed in the Defendants' brief.

## Conclusion

Because State-agent immunity extends to former Police Chief Nunn in her official capacity; because the court independently determines that the City and Nunn, in her personal capacity, are entitled to peace officer immunity under Alabama Code § 6-5-338(b) and the

9

*Cranman* standard; and because the Plaintiffs offered no facts or argument to bring Defendants within the exception to that immunity, summary judgment is due to be granted in favor of the City and in favor of Nunn, both in her official and personal capacities. The court will enter a separate order to that effect, dismissing Count II of the complaint.

Dated this 2nd day of July, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE